46   35
79  463
46   35
82  322
83  588

WALLACE & CO. v. A. & L. FINBERG.

1. MARRIED WOMAN'S LIABILITY ON NOTE.—If the wife join her husband in the execution of a note for goods purchased for the wife, to replenish a stock of goods that were the separate property of the wife, such purchase would not be for the benefit of the wife's separate property in contemplation of the statute, so as to make her liable on the note.

2. LIABILITY OF MARRIED WOMEN—PARTNERSHIP.—The wife cannot be made liable as a partner, to pay a debt contracted in the purchase of goods, to replenish a stock of goods bought by the husband with the wife's separate means.

3. HUSBAND AND WIFE—PARTNERSHIP.—Notwithstanding the hus-

band and wife may assume to act as mercantile partners in trade, and the merchants with whom they deal in the purchase of goods may so recognize them in their dealings, and the attorneys who bring suits on contracts made by them in such dealings may bring or defend suits against them substantially as partners,—it is the duty of the courts, in adjudicating their liabilities, to repudiate the existence of such a relation between man and wife.

4. ATTACHMENT—HUSBAND AND WIFE.—In suit by attachment, when the wife's separate property is seized to secure a note made by the husband and wife, but on which the wife is not liable, she may recover the property, as any person might whose property had been illegally attached for the debt of another, by bringing suit or setting up her claim by cross-bill, under leave of the court, in the pending suit to which she had been made a party; and this she can do in her own name if her husband refuse to join her.

5. DAMAGES IN ATTACHMENT SUIT.—A defendant in attachment, whose goods have been seized under an attachment wrongfully sued out, is entitled to recover back all the goods not necessary to satisfy the debt, or their value if sold, together with compensation for their detention, which would ordinarily be legal interest upon the value of the whole of the property seized from the time of the levy. If the plaintiff should fail to establish his debt, then the defendant should recover back all the property seized, or, if sold, its value at the time of the levy, with legal interest thereon.

6. DAMAGES FOR WRONGFUL ATTACHMENT.—The deterioration in quality and the damages in the price of goods wrongfully seized under attachment, should be pleaded by a defendant specially, since they are not necessary results from an attachment, in order that the opposite party may be prepared, if he can, to meet the evidence offered to establish such contingent injury; and in a suit against husband and wife, where their defenses were conflicting, each asserting claim of ownership to the property seized, and the wife alone pleading special damage, the husband will not be entitled to recover on the special plea.

7. ATTACHMENT—RECONVENTION—DAMAGES.—A defendant, whose property has been wrongfully seized under attachment, may plead in reconvention his damage resulting from the malicious and oppressive abuse of the process of the court, by which his property was seized and detained, or he may rely on his statutory remedy, founded upon the law requiring a bond to be given by the plaintiff in attachment to secure against such damage as might be sustained by the wrongful suing out of the attachment. Under the first, exemplary damages may be recovered; under the latter, only actual damages. Such defenses should be presented as distinct causes of action or cross-action, with the averments respectively appropriate

to each remedy, which are essentially different in the facts neces-
sary to be averred.

5. ATTACHMENT—PRINCIPAL AND AGENT—DAMAGES.—If an agent,
who makes the affidavit and bond in an attachment proceeding, acts
maliciously in doing it, he is responsible; but his malice will not
be imputed by presumption to his principal, though his wrong judg-
ment in suing out the writ would be.

APPEAL from Anderson. Tried below before the Hon. M.
H. Bonner.

The facts will be found carefully stated in the opinion.

*J. J. Ward & R. M. McClure*, for appellants.

1. The pleadings of both defendants show they recognized
the goods attached as the property of Mrs. L. Finberg, and
the jury so returned in their verdict. A. Finberg had no
interest in the goods or in this sale, and could not have been
damaged. (Reid *v.* Samuels, 22 Tex., 115; 2 Greenl. Ev.,
§§ 453, 454.) The 6th and 9th errors are included.

2. The answer of L. Finberg set up a foreign judgment,
and made the same a part of the answer. The judgment
shows it could have had no force in Louisiana, and could
have none here. There was no service, either personal or
otherwise, on defendant A. Finberg. (Webster *v.* Reid, 11
How., 460; Nations *v.* Johnson, 24 How., 201; M'Elmoyle
*v.* Cohen, 13 Pet., 329.) The "Dation in Paiment" was
merged in the proceedings and judgment.

3. The defendant is not allowed to traverse the affidavit
of plaintiff for an attachment. (Cloud *v.* Smith, 1 Tex., 613;
1 Greenl. Ev., §.341.).

4. The intimate relations of the defendants require indis-
putable evidence of good faith, and in its absence notice is
presumed to L. Finberg. (Castro *v.* Illies, 22 Tex., 502,
503, 504; Gibson *v.* Hill, 23 Tex., 82; Belt *v.* Raguet, 27
Tex., 478.) Public policy forbids her testifying in this cause.
(1 Greenl. Ev., §§ 340, 341; 1 Phil. Ev., 77, 78; 2 Kent, 179.)
13th error: There was no service on the defendant A. Fin-

berg. (Webster *v.* Reid, 11 How., 460; Nations *v.* Johnson, 24 How., 201.)

5. The "Dation in Paiment" was merged in the proceedings and judgment, and the certificates to the same were given after record, and were never duly registered. (Whitehead *v.* Foley, 28 Tex., 288.) Neither could it have any force in Texas. (McIntyre *v.* Chappell, 4 Tex., 187; Hall *v.* Harris, 11 Tex., 300.)

6. The defendants were married in South Carolina. At the time of marriage all property of the wife became the property of the husband; his removing to Louisiana or Texas could not change it, (Hall *v.* Harris, 11 Tex., 300,) and therefore the judgment and "Dation in Paiment" were of no force.

7. Was the conveyance to Harris & Fox fraudulent? If not, was it ever explained? If fraudulent or not explained, the plaintiffs were entitled to their writ of attachment, and no damages could be assessed against them. Was it fraudulent? Finberg continued in possession of the goods, and to sell the same. (1 Tex., 415; 14 Tex., 592; 24 Tex., 517, 518, 519, 624; 28 Tex., 73; 23 Tex., 62, 82; 10 Tex., 397; 1 Smith's Lead. Cases, 33.)

No explanation given before suit or after. (18 Tex., 658; 27 Tex., 145; 1 Story's Eq., secs. 246, 247; 15 Tex., 224; 1 Tex., 337, 423.)

Was there an adequate consideration? The instrument values the goods at $6,000, Finberg says $7,000, to pay or secure $1,200, to the exclusion of his numerous other creditors. Finberg bought goods in market on time. So soon as he gets them in hand his wife claims them as her own, and with her husband conveys $6,000 or $7,000 worth of goods to pay or secure $1,200. Consider he only pays to his creditors after the conveyance less than $400. He continues in possession of the goods, and to sell the same; he has no other property. The jury gave damages to both the defendants. The court had excluded the plea of L. Finberg for damages, and there could be no proof for her. (35 Tex., 6, 7.) If there

were damages, it was a legal consequence of their illegal act.

8. The court failed to render a judgment in accordance with the verdict. (5 Tex., 471; 35 Tex., 6, 7; 18 Tex., 68.)

9. The judgment does not state that the jury were qualified as required by law.

*T. T. Gammage*, for appellee.—The plaintiff in attachment suits is required by statute to file his bond payable to the defendant, &c., conditioned to pay damages, &c. (Paschal's Dig., art. 143.)

If the attachment be wrongfully sued out, the plaintiff is liable to such actual damages as defendant may have sustained by such wrongful act. (Punchard *v.* Taylor, 23 Tex., 427; Reed *v.* Samuels, 22 Tex., 115.)

One of several defendants may recover damages and the other not. (Punchard *v.* Taylor, 23 Tex., 424.)

Actual damages may and of right ought to be recovered. (Drake on Attach., sec. 174; Culbertson *v.* Cabeen, 29 Tex., 255.)

Where fraud, malice, or oppression intervenes, vindictive or exemplary damages will lie. (Sedgwick on Dam., 38; Graham *v.* Roder, 5 Tex., 149; Smith *v.* Sherwood, 2 Tex., 463; Cole *v.* Tucker, 6 Tex., 266.)

An excessive levy is oppressive to defendant and punitary damages may be taxed by the jury. (Monroe *v.* Watson, 17 Tex., 625.)

The verdict of the jury must be clearly wrong before this court will disturb and set it aside. (Long *v.* Steiger, 8 Tex., 462; Gamage *v.* Trawick, 19 Tex., 64; Perry *v.* Robinson, 2 Tex., 491; see also 19 Tex., 152, 226; 15 Tex., 410.)

It is not enough that it is not clear that it is right, or that that there was conflicting evidence. (Briscoe *v.* Bronaugh, 1 Tex., 340; Edrington *v.* Kiger, 4 Tex., 93.)

ROBERTS, CHIEF JUSTICE.—On the 19th day of January, A.

D. 1874, Wallace & Co. filed a petition on three notes for about $400, signed by A. Finberg and L. Finberg, and sued out an attachment upon the ground that they had transferred their property to defraud their creditors, which was levied upon a large stock of goods on 24th of January, 1874; that L. Finberg is the wife of A. Finberg is not disclosed in the original petition or writ.

At the March Term of the court, 1874, L. Finberg pleaded that she is, and was when the notes were signed, a married woman, the wife of A. Finberg; that they were not given by her authority, nor for the benefit of herself, her children, or her separate estate. This plea was not signed or sworn to.

At the same term A. Finberg pleaded that it is not true that he had transferred his property for the purpose of defrauding his creditors; that the writ of attachment was maliciously and wrongfully sued out and levied upon one thousand dollars' worth of goods, and his business thereby stopped and his credit ruined, which was good before as a merchant, by which he is damaged $10,000. He also pleaded payments of sums not credited. He referred to the bond for attachment in a general way, without setting it out, and asked judgment thereon against plaintiffs and their sureties. (Sureties are not made parties.)

At the same term A. & L. Finberg filed jointly a plea in substance the same as the one by him previously filed, stating that the levy was excessive, &c.

In April afterwards the sheriff applied for and obtained an order to sell the goods levied on, as perishable, and on the 29th of that month sold goods amounting to $879.18; and after deducting $206.80 expenses thereon, there was placed in the hands of the clerk the sum of $672.30. The goods sold appear in the sale bill returned by the sheriff as not being all of the goods levied on.

At the July Term, 1874, the defendants filed a joint answer, in reconvention, for $4,300 damages, for the wrongful and malicious suing out the attachment, stating, that plaintiffs

induced the sheriff to levy upon their whole stock of goods, of the said value of $4,300, as shown by the return of the sheriff; that said levy was excessive, being upon the whole of the property owned by them, upon which they depended for a living; that A. Finberg was a merchant, trading on said stock of goods to support himself, wife, and one child; that by the malicious and wrongful suing out of this attachment other creditors were induced also to bring suits and seize upon his said stock; that defendants were unable to replevy the goods, and were thereby thrown out of business to his damage five dollars per day; that they have been deprived of the profits upon the sale of said goods, and by which they have been damaged as claimed as aforesaid.

Afterwards, at the same term, A. Finberg filed an amendment asking that the preceding answer may be considered as an answer filed by him alone, and that the words "A. Finberg" and "defendant" be substituted for the words "A. & L. Finberg" and "defendants," and prayed further for general relief, and damages, &c.; the effect of which was an effort to place A. Finberg in the attitude of having filed a separate answer claiming damages, in reconvention, without respect to his wife's separate interest in the property attached, and treating the property as community property.

Afterwards, at the same term, L. Finberg filed an amended answer first, and asked leave to withdraw her previous answer, and then filed a general answer, setting up that she is and was a *feme covert* and not liable to be sued in this action, &c.; also a general denial; also a plea in reconvention for a large amount of damages for the wrongful and malicious suing out the attachment, and as grounds thereof alleged that the whole of the property levied on, of the value of nearly five thousand dollars, was and is her separate property, by reason of a certain deed, styled "Dation in Paiment," executed, and a judgment thereon rendered in the State of Louisiana, giving her a lien upon the future acquisitions of her husband for about $1,500, which was alleged to be duly

recorded in the clerk's office of the county of Anderson, and by which plaintiffs had notice before the levy of said attachment that the goods levied on were the separate property of the defendant L. Finberg, by said record, as well as by actual notice given by her at the time the writ was levied; that said levy was excessive; that the goods were damaged and out of style by being shut up, and the price of them had fallen from not being sold when there was money in the country to buy them; that she lost profits in sales amounting to two and one half dollars per day, and again twenty-five dollars per day; that she had to employ lawyers, whose fees were worth $300, and she denies that she had transferred her property to defraud her creditors; that the "bulk" of the property levied on was the property sold to her by her husband, and the balance was purchased with the proceeds of it. She alleges that plaintiffs gave bond in the sum of $1,000, with sureties, and asks judgment thereon, in reconvention, for $1,000 on said bond, besides damages, as before claimed, ten thousand eight hundred dollars.

During the same term the plaintiffs filed three amended petitions, in the nature of a replication to the claim of reconvention made by each of the defendants, in which plaintiffs alleged that the defendants had been making transfers of their property before and after the levy, for the purpose of defrauding their creditors, and referred to the "Dation in Paiment," executed the 16th of August, 1871, and judgment recorded in the clerk's office of Anderson county, and to the deed of trust upon all their goods in favor of Harris & Fox, executed 16th of August, 1873, and recorded, and gave notice to the defendants to produce said deeds upon the trial; that at the time of the issuing of the attachment, A. Finberg was a merchant in failing circumstances, unable to fully pay his indebtedness; that his wife, L. Finberg, had only a community interest in the property; that he remained in possession of, and continued to dispose of and trade on, his stock of goods after it had been deeded, and held himself out to be the

owner, and did business in his own name; that for twelve months he had been refusing to pay his debts, and was being sued for them; that if his wife had any goods they were intermixed with the goods of A. Finberg, and that she, by joining the deed of trust, was aiding him to defraud his creditors.

Further, plaintiffs alleged that if the court should hold that the property levied on was the separate property of L. Finberg, that she was liable in this suit, because the goods for which the notes sued on were given, were bought to be used in trade to keep up the stock of goods and for the support of L. Finberg and her child; and A. Finberg had no other property out of which the plaintiffs could make their money.

L. Finberg amended, and said that she had committed no fraud upon her creditors, and that her husband had no authority from her to assume to be the owner of the stock of goods.

Without repeating the various exceptions, it will suffice to say that each party filed general and special exceptions to all the pleadings of the other.

These exceptions coming on to be heard, the exceptions to the original petition were waived. The exceptions of plaintiffs were sustained as to the damage claimed by the wife, L. Finberg, because the husband was not joined with her in her plea of reconvention, no reason being given why he was not; and also as to damages claimed by defendant A. Finberg, for profits and the sum of five dollars per day; and also to plea of payment and to plea of traverse of affidavit for attachment. The other exceptions were overruled.

After these rulings, preceding the trial, there was left the following pleadings standing as properly presented in the case respectively on each side, to wit: the original petition, with the attachment, and also the amended petitions, by way of replication, on the part of plaintiffs. On the part of the defendant L. Finberg, her plea of coverture, a general de-

nial, and her claim of separate property in the stock of goods. On the part of A. Finberg, a general denial, a plea of reconvention for the wrongful suing out of the writ of attachment, in which no special damage is alleged other than a claim of excessive levy, and a plea of reconvention for the malicious suing out and levying of the writ of attachment, in which the grounds of injury alleged were an excessive levy, the stopping of his business, and the ruin of his credit as a merchant. All of these grounds of action were intermixed and embraced in the same answers.

Under the issues presented by these pleadings the first question presented was, upon the notes being adduced in evidence, as set up in the petition,—who was liable on said notes? There could be no question about the liability of A. Finberg. Mrs. L. Finberg, upon her plea of coverture being established in evidence, would not be liable, unless it was shown that the goods for which the notes were given were purchased by her authority for the use of herself or child, or for the benefit of her separate property. There was no evidence tending to show that the goods were purchased for the special use of the wife or her child under such circumstances as to render her liable on the notes with her husband. If it had been shown by the plaintiffs, that the goods bought from them were purchased by A. Finberg, or by both A. & L. Finberg, to replenish a stock of goods that were, before said purchase, the separate property of the wife, that would not be benefiting her separate property, in the contemplation of our marital rights' law, so as to render the wife liable on the notes with the husband given for the goods bought of the plaintiffs. If it would, the wife's separate property could be invested in a stock of goods for trade, and she and her husband could carry on the business of merchandising as a means of increasing her separate property.

If the husband should use the separate property of the wife in carrying on a mercantile business, it does not render her liable as a partner in the purchase of goods made to

continue the enterprise; and, notwithstanding the husband and wife may assume to act as mercantile partners in trade, and the merchants with whom they deal in the purchase of goods may so recognize them in their dealings, and the attorneys who bring suits upon contracts made by them in such dealings may bring or defend suits against them substantially as partners or joint obligors, it is the duty of the courts, in adjudicating their liabilities, to repudiate the existence of such a relation between man and wife in this State; for surely the marital relation has become sufficiently complicated already without adding that of mercantile partnership or anything like it.

Upon neither ground, then, could the plaintiff recover a judgment against L. Finberg on these notes.

The next question is, could she, either separately or in connection with her husband, recover any judgment against the plaintiffs. The court treated her plea of reconvention as a cross-action against the plaintiffs; and as she had filed it separately, without joining her husband with her in it, and without assigning any reason why she did not join him, the court decided that she could not recover anything as damages for the wrongful seizure of the goods. This precluded her from a recovery of damages, either separately or jointly with her husband, whether the goods levied on were her separate property or not.

Upon her cross-action for damage being ruled against by the court, and upon her coverture being established, she was substantially out of the case as to a recovery, either against her for the debt or for damages on account of the wrongful suing out of the writ.

If the goods were shown to be her separate property, not being liable on the notes, she could recover her property, as any other person could whose property was illegally attached for the debt of another person, by making claim or bringing suit, or setting up her claim in this suit, of which she had been made a party, upon bringing her suit or cross-

action, by leave of court, separately, if her husband failed to join her in it.

There was no verdict found upon that part of the plea of reconvention which charged the plaintiffs with malicious conduct, in the issuing and levying of the attachment, and therefore it is unnecessary to consider the case in reference to what might have been recovered under the pleadings upon that head.

The remaining question is, what did the husband, A. Finberg, have a right to recover in his cross-action or plea in reconvention for the wrongful suing out of the attachment?

If the stock of goods levied on was the separate property of the wife, as found by the jury, that negatived the truth of his plea, in which he claimed the property as belonging to him. In that plea he did not define the status of the property, as to its being separate or community, but represented that his stock of goods had been attached, and that he had been wrongfully deprived of the benefit of the use of them, for which he claimed damages.

If it was established that the goods were his, and that the attachment was wrongfully sued out, he was certainly entitled to recover back all of the goods that were not necessary to satisfy the debt, or their value, if sold, together with compensation for their detention, which would ordinarily be legal interest upon the value of the whole of the property seized from the time of the levy. (Sedg. on Dam. 491; Drake on At., 178; Reidhar v. Berger, 8 B. Monr., 160.)

That would be the direct and proximate result and legal consequence of the injury inflicted by a seizure and detention of his property through process wrongfully sued out.

If plaintiff should fail to establish his debt, or if the lien should be held invalid, then he should recover the whole of his property, or, if sold, its value at the time of levy, with legal interest thereon. (Earl v. Spooner et al., 3 Denio, 246.)

The deterioration in quality and depreciation in the price

of the goods, if any existed in fact, are grounds of special damage. (Drake on Attach., 180.)

Injuries from these two grounds, though consequential, are proximate, but not certain. They may exist or not exist in any given case, and do not happen as a matter of course. And therefore when they, or either of them, do happen in any case, the party liable to suffer an injury thereby should allege them as grounds of special damage, so as to notify the opposite party to be prepared to rebut, if he can, the evidence offered to prove such contingent injury to the value of the property by its seizure and detention. (1 Chit. on Pl., 370; Sedg. on Dam., 575; Ib., 68; Ib., 492; Squier *v.* Gould, 14 Wend., 159.)

The defendant A. Finberg, upon showing the suing out of the writ to have been wrongful, might also have recovered damages by reason of the deterioration in the quality and of the depreciation in the price of the goods, consequent upon their seizure and detention, if he had alleged them as special grounds of damage. He failed to do so. The grounds of special damage alleged by him was the loss of credit and of profits in carrying on his business, resulting from the seizure and detention of his goods, which the court, as we may presume, held to be too remote and speculative, and excluded, upon exception to that part of the cross-action, and in the charge to the jury. (Drake on Attach., 176.)

Both of these grounds of special damage are alleged in the plea of reconvention filed by the wife, L. Finberg. But that cannot avail A. Finberg, as both he and his wife, through their respective counsel, took great pains to have their defenses and cross-actions separate, and not joint, and to have the court so to consider them; and the ruling upon the pleadings, show that the court awarded to them that privilege in the trial of the cause brought against them. It was in view of that separate attitude of each defendant, that the court sustained exceptions "to the separate answer of the wife, L. Finberg, setting up claim for damages, the husband

not being joined therein, no reason being given why he was not so joined, and he, in his answer, having set up claim for the same damages." It is true, as here said, that A. Finberg did claim the same damages, but did not allege these grounds of special damage, as was done by his wife in her separate answer.

Under his pleadings, then, A. Finberg, under the ground of a wrongful suing out of the attachment, was confined, in his recovery of damages, to compensation for the detention of his goods, which was legal interest on their value, stated by his plea, and proved by one of the witnesses, who assisted in taking the inventory, to be $4,317.41. And the goods having been attached on the 24th of January, 1874, and the trial and judgment having been on the 27th of August, 1874, the interest upon their estimated value for that time (seven months and three days) amounted to a little over two hundred dollars. The jury, in finding damages to the amount of $643.32, must have acted upon some other ground of damage than that alleged by A. Finberg.

It is evident that the jury did not find this amount as the value of the goods or any part of them, because they found the goods to belong to Mrs. L. Finberg; and it was alleged and shown in the evidence that the goods were held under other process by the sheriff at the time of the trial, and there was no allegation in the pleading or issue formed as to the sale of them, notwithstanding it does appear in the record that a portion of them were sold as perishable property, at the instance of the sheriff, by order of the court. A. Finberg stated in his evidence that they were worth, when levied on, an amount nearly three times what they brought at the sale. That, however, was a matter outside of the pleadings in the case; and if A. Finberg had desired to recover for the damages done him in the sale, he should have alleged such facts as would have put that matter in issue. (Sedg. on Dam., 575.)

It is not thought necessary now to discuss the weight of the evidence tending to prove that the writ was not wrong-

fully sued out, or the contrary; nor the admissibility of the evidence offered and adduced on that subject, including the deed of "Dation in Pàiment" and the deed of trust. The effect of such transfer, with the attending circumstances, upon the rights of creditors must generally be left to the jury under instructions from the court, subject to the sound discretion of the court in sustaining or setting aside their findings, upon a motion for new trial. (Carlton *v.* Baldwin, 22 Tex., 724.) The court charged the jury that they must disregard the claim of damages for the malicious suing out and levying of the writ of attachment for the want of evidence to sustain it, and the jury acted accordingly. It is worthy of notice, however, that the defendant, A. Finberg, in his several answers in reconvention, joined together the common-law remedy, in the nature of an action of trespass on the case, for the malicious and oppressive abuse of the process of the court, by which his property was seized and detained, and the statutory remedy founded upon the law requiring the bond to be given by the plaintiff in attachment to secure the defendant in such damages as he might sustain by the wrongful suing out of the attachment. (Donnel *v.* Jones *et al.*, 13 Ala., 510; Wilson *v.* Outlaw, Minor, 376; Kirksey *v.* Jones, 7 Ala., 622; Drake an Attach., 157, 158, 159.) As in that first mentioned, exemplary damages can be recovered, and in the other only actual damages, they should more properly be presented as separate and distinct causes of action or cross-action, with the averments respectively appropriate to each remedy, which are essentially different in the facts necessary to be averred. The practice, however, has been to present them together, and there has been no ruling of this court adverse to it. Had the course here recommended been pursued in this case, it would have avoided the perplexity and confusion attending such complicated issues, by rendering it obvious, before the trial commenced, that the plaintiffs might be held liable for the wrongful, but not for the malicious use of the process of attachment, sued out by their agent, Carey, and not by them-

selves. If the agent who makes the affidavit and bond acted maliciously in doing it, he is responsible; but his malice would not be imputed by presumption to his principals, while his bad judgment in wrongfully suing out the writ would be. (Drake, 182; McCulloch *v.* Walton, 11 Ala., 492.)

The jury, under the instructions of the court, found four distinct verdicts, to wit: 1st, in favor of plaintiffs against the defendants jointly on the notes; 2d, that the goods were the separate property of the wife, L. Finberg; 3d, that she had a prior lien to the amount of fifteen hundred dollars; 4th, that the attachment was wrongfully sued out; and they assessed the actual damages of defendants, A. and L. Finberg, against the plaintiffs at the sum of $643.32.

The court approved the first and fourth verdicts, declaring and treating the second and third as immaterial, and rendered a judgment in favor of the plaintiffs against the defendants on the notes sued on, ($499,) and in favor of defendants against plaintiffs for the damages assessed, ($643.32,) but in substance a joint judgment in favor of A. and L. Finberg against the plaintiffs for the difference, being the sum of $144.32 as damages.

There is nothing to indicate that this was designed as a finding by the jury, and a judgment by the court in favor of the husband and wife for the benefit of the wife.

It stands, without qualification, a judgment in their favor, as joint owners or partners in trade, for a certain sum, after deducting an amount due to the plaintiffs by them in the same capacity. It is not perceived upon what principle such a judgment can be rendered consistently with the pleadings and evidence in this case. There was no competent evidence to render her liable, as a married woman, on the notes, whether the property was community or separate property. If it was her separate property, he had no right to recover in his own right jointly with her; and if it was community property, she had no right to recover jointly with him damages for the wrongful suing out of the writ. Besides this,

the defendants had severed in their defenses, and her claim for damages had been excluded by the court, in passing upon exceptions to the pleadings, before the case was submitted to the jury.

We find, amidst twenty assignments of error, the following, to wit:

"18. The jury erred in their verdict, and the same is contrary to law and the evidence.

"19. The court erred in overruling plaintiff's motion for a new trial, and rendering a judgment not in accordance with the verdict."

The verdicts, in whole or in part, do not conspire to any definite legal result that would enable the court to render a judgment in harmony with the case made by the parties in their pleadings and evidence.

We are therefore of opinion that the judgment is erroneous, and must be reversed and the case remanded.

REVERSED AND REMANDED.