**Mrs. Catherine MUNKE et al., Appellants,**

v.

**Lora HUBBARD et al., Appellees.**

**No. 10326.**

Court of Civil Appeals of Texas.

Austin.

June 29, 1955.

Massey, Hodges, Moore & Gates, W. E. Henderson, Columbus, for appellants.

J. P. Hart, La Grange, for appellees.

HUGHES, Justice.

This is a strange case. Rather it is a very ordinary case with a strange result.

The suit was filed by appellants, Mrs. Catherine Munke and her son, Clarence Munke, against Lora Hubbard and Eddie Willrich, the operator and owner, respectively, of the "East Inn Grill" to permanently enjoin the operation of such grill in a manner making it a nuisance.

Appellee Hubbard answered and filed a cross action for damages based on allegations that appellees had in various and sundry ways such as calling the Sheriff to report disturbances at the Inn, writing the Liquor Control Board and threatening and abusing his customers, caused his cafe business to suffer.

Based on a jury verdict that Hubbard allowed the nickelodeon at the Inn to be played in a manner constituting a nuisance but that appellants "willfully and unjustifiably interfered with the operation" of the Inn so as to cause $250 loss of profits therefrom the court entered judgment enjoining loud playing of the nickelodeon and awarding Hubbard a judgment against appellants for $250.

Appellants only complain of the judgment.

Appellee Hubbard has filed no brief.

We sustain appellants' first point which is that the evidence as to loss of profits is insufficient to sustain the verdict and judgment.

Appellee kept no books for his Inn. He testified that before appellants interfered with his business he "cleared about $150.00" per month but that following such interference his business fell off. We quote some of his testimony by which he attempted to prove damages:

"Q. From approximately July 1, 1953, what kind of business did you have? A. I haven't got any kind now, just a little bit. It don't amount to anything.

"Q. Did your business quit on July 1, 1953? A. Yes.

"Q. Just automatically, just quit right there? A. Yes.

\* \* \* \* \* \*

"Q. You operate that cafe all the time? Is it open every night? A. No.

"Q. How often is it open now? State for the last several months how have you run that business, Lora? A. Oh, about three nights a week, or four, something like that.

"Q. When do you have most of your business, on a week-end? A. Yes.

"Q. With reference to the number of customers during this year and the latter part of last year, do you have as many customers now as you used to have? A. No.

\* \* \* \* \* \*

"Q. How does that compare with the number of customers and the number of cars you had a year and a half or two years ago? A. No, sir, that don't compare with it.

"Q. How many customers and how many cars would you have out there on Saturday night on an average here a couple of years ago? A. I would say sixty or seventy maybe.

"Q. Can you tell this jury whether you have any observation about how much your business has fallen off, half of it, or three-fourths of it, or a third of it, or any of it? A. Yes, sir.

"Q. What is it? A. I imagine in 1953 I lost about $1100.

"Q. Talking about the number of customers you had for the last several months as compared here a few years ago when your business was good, have you lost half of your customers, or all of them, three-quarters of them? A. I lost way over half of them.

"\* \* \*

\* \* \* \* \* \*

"Q. Now, since July 1, 1953 up until the date that this petition was filed in November, have you made $150 a month? A. No, sir.

"Q. Cleared $150 a month? A. No, sir.

\* \* \* \* \* \*

"Q. For the last four or five months, say, along the first part of the year, the early part of the year, January through April or May, did you make any money then? A. No, sir, we haven't made no money out there to amount to anything since 1953 around in July."

The rule is that evidence to establish profits must be certain and not speculative and while exact calculations are not required it is necessary that there be data from which they may be ascertained with a reasonable degree of certainty and exactness. Southwest Battery Corporation v. Owen, 131 Tex. 423, 115 S.W.2d 1097; Silberstein v. Laibavitz, 200 S.W.2d 647, by this Court.

There is no data here to support Hubbard's conclusions of lost profits. Similar testimony was found insufficient to authorize recovery for business losses by the San Antonio Court in Texas & N. O. R. Co. v. Wood, Tex.Civ.App., 166 S.W.2d 141.

Appellants have filed a motion to revise the costs charged for the Statement of Facts. The amount in the cost bill is $391. The Statement of Facts is in question and answer form and under Art. 2325, V.A.C.S., the charge should be 15 cents per one hundred words. Appellants' unchallenged calculation of the proper amount to be charged is $170.61. We accept this figure and revise the Cost Bill accordingly.

That portion of the judgment from which no appeal was taken is, of course, left undisturbed otherwise this cause is reversed and remanded and Cost Bill amended as indicated.

Reversed and remanded.